CHAD MIZELLE
Acting Associate Attorney General
ABHISHEK KAMBLI
Deputy Associate Attorney General
BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
ELIANIS PEREZ
Assistant Director
LUZ MARIA RESTREPO
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>ANDREW BESHEAR, Governor of the Commonwealth of Kentucky, in his official capacity; ROBBIE FLETCHER, Commissioner of Education for the Commonwealth of Kentucky, in his official capacity; COUNCIL ON POSTSECONDARY EDUCATION,<br><br>  Defendants. | CIVIL No. _____<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

Federal law prohibits aliens not lawfully present in the United States from getting in-state tuition benefits that are denied to out-of-state U.S. citizens. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet Kentucky regulation 13 Ky. Admin. Regs. 2:045 § 8(4)(a) (2025), expressly and directly conflicts with federal immigration law because it enables an "undocumented alien" present in the United States to qualify for reduced tuition at public state colleges while requiring U.S. citizens from other states to pay higher tuition rates. This unequal treatment of Americans is squarely prohibited and preempted by federal law, which expressly provides that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added).

Equally determinative is the fact that Kentucky does not extend eligibility for in-state tuition benefits to individuals who are not lawfully present in the United States through "a State law" that "affirmatively provides for such eligibility," as required by 8 U.S.C. § 1621(d). Moreover, even if such a law did exist, a state may not grant in-state tuition benefits to aliens not lawfully present in the United States based on residency if those same benefits are denied to U.S. citizens from out of state.

13 Ky. Admin. Regs. 2:045 § 8(4)(a) is thus unconstitutional under the Supremacy Clause of the U.S. Constitution, and this Court should declare it illegal and permanently enjoin its enforcement.

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2

2. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because all Defendants reside within the Eastern District of Kentucky where the state capital is located, and because Defendants' acts or omissions giving rise to this Complaint arose from events occurring within this judicial district. Additionally, all of the Defendants are located in Franklin County, Kentucky.

3. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

**PARTIES**

4. Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and it enforces federal immigration laws through its Executive agencies, including the Department of Justice and Department of Homeland Security (DHS), as well as DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

5. Defendant Andrew Beshear is the Governor of the Commonwealth of Kentucky and is sued in his official capacity.

6. Defendant Robbie Fletcher is the Commissioner of Education for the Commonwealth of Kentucky and is sued in his official capacity.

7. Defendant Kentucky Council on Postsecondary Education (CPE) is a coordinating board that oversees Kentucky's state universities and the Kentucky Community and Technical College System and serves as policy advisor to the Governor of Kentucky and to the Kentucky

General Assembly.[1] CPE is responsible for determining tuition rates and is charged with defining residency for the purpose of assessing tuition rates. Ky. Rev. Stat. Ann. § 164.011(8)(a).

## FEDERAL LAW

8. The Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

9. The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the Constitution, numerous acts of Congress, and binding Supreme Court precedent.

10. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

11. In Executive Order 14218 of February 19, 2025, *Ending Taxpayer Subsidization of Open Borders*, President Trump ordered Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]" In Executive Order 14287 of April 28, 2025, *Protecting American Communities From Criminal Aliens*, President Trump ordered the relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful,

---

[1] *See* Council Postsecondary Education, About Us, About the Council: Who We Are, available at https://cpe.ky.gov/aboutus/who_we_are.html (last visited June 13, 2025).

4

preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]"

12. These Orders reinforce that the Federal and state governments must not treat Americans unequally to aliens not lawfully present in the United States for eligibility of benefits and reiterate congressional sentiment, evidenced in several statutory provisions of the Immigration and Nationality Act (INA), to curb incentives for illegal immigration provided by the availability of various public benefits.

13. Specifically, in 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). One of the objectives of these Acts was to promote immigrant self-sufficiency, reduce immigrant reliance on public assistance, and ensure that public benefits do not incentivize illegal entry. *Id.*; *see* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

14. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id.* § 1601(2)(A).

15. Congress emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B). Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national

immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

16. As relevant here, PRWORA states: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

17. And even then, a state cannot provide aliens not lawfully present in the United States in-state tuition benefits based on residence within the state that are denied to out-of-state U.S. citizens. IIRIRA included a clear "[l]imitation on eligibility preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

18. Therefore, Section 1623(a) does not allow aliens not lawfully present in the United States to qualify for in-state tuition (also referred to as "resident tuition") based on residence within the state if that same tuition rate is not made available to all U.S. citizens without regard to their state residency. 8 U.S.C. § 1623(a).

**RELEVANT KENTUCKY LAWS & REGULATIONS**

19. In direct conflict with federal law, a Kentucky regulation permits an alien who is not lawfully present in the United States to qualify for reduced in-state tuition rates based on

residence within the state. *See* 13 Ky. Admin. Regs. 2:045 § 8(4)(a). At the same time, it denies these reduced rates to U.S. citizens who do not meet Kentucky's residency requirements.[2]

20. Key definitions that are relevant to determining eligibility for reduced in-state tuition are set forth in 13 Ky. Admin. Regs. 2:045. For instance, 13 Ky. Admin. Regs. 2:045 § 1(6) defines "domicile" as a "person's true, fixed, and permanent home and is the place where the person intends to remain indefinitely, and to which the person expects to return if absent without intending to establish a new domicile elsewhere." Under § 1(14), "residence" is defined as "the place of abode of a person and the place where the person is physically present most of the time for a noneducational purpose."

21. Under § 1(10) a "Kentucky resident" is defined as a "person determined by an institution for tuition purposes to be domiciled in, and a resident of, Kentucky as determined by this administrative regulation." Conversely, § 1(11) defines "nonresident" as a person who is either domiciled outside Kentucky, currently maintains legal residence outside the state, or otherwise fails to qualify as a Kentucky resident under the regulation.

22. Under 13 Ky. Admin. Regs. 2:045, Kentucky's postsecondary education institutions are responsible for making the initial determination of whether a student qualifies as a Kentucky resident for purposes of admission and tuition assessment. These determinations must follow the definition and criteria established in the regulation. *See* 13 Ky. Admin. Regs. 2:045, §

---

[2] *See* Council Postsecondary Education Tuition and Mandatory Fee Policy, Academic Year 2023-2024, available at https://cpe.ky.gov/policies/finance/tuitionandmandatoryfeespolicy.pdf (last visited June 13, 2025); *see also* Council Postsecondary Education, Our Work, Tuition Setting, State Tuition Data, Financial aid: Financial aid dashboard (CPE), available at https://reports.ky.gov/t/CPE/views/StudentFinAidAnalysis_15894835650310/Reciprocity?%3Adisplay_count=n&%3Aembed=y&%3AisGuestRedirectFromVizportal=y&%3Aorigin=viz_share_link&%3AshowAppBanner=false&%3AshowVizHome=n (last visited June 13, 2025) (reflecting that tuition amounts for residents in Kentucky postsecondary educational institutions was significantly lower than they were for nonresidents).

1(5); *see also* Ky. Rev. Stat. Ann. § 164.030 (mandating that Kentucky postsecondary institutions comply with the CPE's regulations and rulings concerning entrance fees and related matters).

23. Under 13 Ky. Admin. Regs. 2:045, the CPE is authorized to establish different tuition rates for resident and nonresident students. Specifically, § 2(2) of the regulation provides that the CPE "may require a student who is neither domiciled in, nor a resident of, Kentucky to meet higher admission standards and to pay a higher level of tuition than resident students." Consistent with this authority, the CPE requires nonresident students to pay a higher tuition than Kentucky residents.

24. In its published tuition and mandatory fee policy for the most recently approved tuition cycle, the CPE stated: "[t]he Council and the institutions believe that nonresident students should pay a larger share of their educational costs than do resident students. As such, published tuition and fee levels adopted for nonresident students shall be higher than the prices for resident students enrolled in comparable programs of study."[3]

25. The only exception to this general rule is where a reciprocity agreement exists that provides for reduced tuition rates for qualifying nonresidents. *See* 13 Ky. Admin. Regs. 4:010 (governing state authorization reciprocity agreement standard and procedures). Kentucky currently

---

[3] *See supra* n.2; *see also* Kentucky Council on Postsecondary Education, Tuition and Mandatory Fee Recommendation, Academic Years 2025-26 and 2026-27, available at https://public.onboardmeetings.com/Meeting/3Mw1%2FTKEhkSOghYM7xq%2FQy%2FIjTMi FZQJcVvMgfL9UVMA/plQ%2FmhKbai82IbAwppo6tqHDNDo9iAr02B09btmKK6kA/dj8H3Q zGtt%2FvH6fpefspuHy9x0T3j0H1JahzzL2zz4sA/X3GNk92u5dDF0xmh9C22w3WYSppNf0tcv igrHbTjhcMA/Agenda%20Document (last visited June 13, 2025) (CPE Finance Committee's recommendation for the current tuition-setting cycle recommending mandatory fee ceilings for academic years 2025-2026 as well as 2026-2027 for residents while mandating that nonresident undergraduate tuition and fee rates comply with the CPE's Tuition and Mandatory Fees Policy).

maintains such reciprocity with multiple campuses in Indiana, various universities and colleges in Ohio, and several institutions in West Virginia.[4]

26. The significance of an individual's classification as a resident or nonresident for tuition purposes is underscored by the availability of an administrative hearing to challenge the determinations. 13 Ky. Admin. Regs. 2:070.

27. An individual seeking classification as a Kentucky resident bears the burden of proving status by a preponderance of the evidence. 13 Ky. Admin. Regs. 2:045 § 2.

28. A determination of residency may be based on a variety of factors. For example, 13 Ky. Admin. Regs. 2:045 § 10 considers continuous physical presence in Kentucky in a nonstudent status for twelve months immediately preceding the relevant academic term, as well as the filing of a Kentucky resident income tax return for the preceding calendar year. *See also id.* § 4 (identifying circumstances under which a presumption of non-residency applies).

29. A related statute found at Ky. Rev. Stat. Ann. § 164.020(8)(a) states that the CPE "shall classify a student as having Kentucky residency if the student met the residency requirements at the beginning of his or her last year in high school and enters a Kentucky postsecondary education institution within two years of high school graduation." This statute does not necessarily conflict with 8 U.S.C. § 1623(a)'s prohibition on making reduced in-state tuition based on residence in the state accessible to aliens not lawfully present in the United States if any out-of-state U.S. citizen or national is denied the same benefit. To the extent that it does, then that statute explicitly conflicts with 8 U.S.C. § 1623(a).

---

[4] Council Postsecondary Education, Our Work, Tuition Waivers, Reciprocity Agreements and Other Discounts, available at https://cpe.ky.gov/ourwork/tuitiondiscount.html (last visited June 13, 2025).

30. In any event, the regulation at 13 Ky. Admin. Regs. 2:045 § 8(4)(a) explicitly conflicts with 8 U.S.C. § 1623(a) because it mandates that an individual "shall be" classified as "a Kentucky resident for the purpose of this administrative regulation if the person graduated from a Kentucky high school and . . . is an undocumented alien." Moreover, because no Kentucky statute "affirmatively provides" for such a benefit, 13 Ky. Admin. Regs. 2:045 violates 8 U.S.C. § 1621(d).

31. This treatment is in sharp contrast with how the regulations handle certain nonimmigrant visa holders, who are categorically excluded from resident status because they do "not have the capacity to remain in Kentucky indefinitely and therefore cannot form the requisite intent necessary to establish domicile." *Id.* § 8(3)(a).

32. Thus, aliens not lawfully present in the United States who graduated from a Kentucky high school are deemed residents of the state for in-state tuition purposes, while lawfully present nonimmigrants cannot be—a stance that conflicts with federal immigration law. *See, e.g.*, 8 U.S.C. § 1182(a)(6)(A)(i), (7)(A)(i) (rendering inadmissible and subject to removal aliens who are present in the United States without lawful admission or documentation); *see also* 8 U.S.C. § 1229a(a)(2) (providing that such aliens may be placed in removal proceedings based on their inadmissibility).

33. Most critically, however, 13 Ky. Admin. Regs. 2:045 § 8(4)(a), directly conflicts with 8 U.S.C. § 1623(a) in that it makes reduced in-state tuition based on residence in the state accessible to aliens not lawfully present in the United States, while denying the same benefit to U.S. citizens who are classified as nonresidents under the regulation.

## THE KENTUCKY PROVISION IS PREEMPTED

34. The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

35. Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

36. Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."); *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) ("Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law.") (citation omitted).

37. "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *United States v. Zheng*, 87 F.4th 336, 344 (6th Cir. 2023) ("'When Congress clearly expresses its intent to repeal or to pre-empt, we must

respect that expression.'") (citing *Branch v. Smith*, 538 U.S. 254, 285 (2003) (Stevens, J., concurring in part and in the judgment)).

38. When the federal statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted). Further, the "'ultimate touchstone' of preemptive effect is Congress's purpose." *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522 (6th Cir. 2001); *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978) (stating that "'[t]he purpose of Congress is the ultimate touchstone'" of preemption analysis) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

39. Here, the federal law, 8 U.S.C. § 1623(a), contains an express preemption clause as it directs that "[n]otwithstanding any other provision of law," an alien not lawfully present in the United States "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

40. As evidenced in the title—"Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits"—§ 1623(a) requires that all U.S. citizens be eligible for a benefit, without regard to residency, before any alien not lawfully present in the United States may receive the same benefit (based on residency).

41. Therefore, the federal statute, 8 U.S.C. § 1623(a), expressly preempts Kentucky's 13 Ky. Admin. Regs. 2:045 § 8(4)(a) because it bestows greater benefits on aliens not lawfully

present in the United States than U.S. citizens when it comes to postsecondary education benefits. Ky. Admin. Regs. 2:045 § 8(4)(a) is therefore unconstitutional.

## CLAIM FOR RELIEF

## VIOLATION OF THE SUPREMACY CLAUSE
## (EXPRESS PREEMPTION)

42. Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

43. The challenged provision, 13 Ky. Admin. Regs. 2:045 § 8(4)(a), expressly violates federal immigration law twice over. It directly conflicts with federal immigration law's prohibition on providing postsecondary education benefits—such as lower tuition rates—based on residency to aliens not lawfully present in the United States that are not available to all U.S. citizens regardless of residency. 8 U.S.C. § 1623(a). And it violates federal immigration law's requirement that a state can only provide eligibility for certain benefits to aliens not lawfully present in the United States through "the enactment of a State law" that "affirmatively provides for such eligibility." *Id.* § 1621(d).

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. that this Court enter a judgment declaring that the challenged provision violates the Supremacy Clause and is therefore unconstitutional and invalid;
2. that this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing the challenged provision,
3. that this Court award the United States its costs and fees in this action; and
4. that this Court award any other relief it deems just and proper.

| | |
|---|---|
| DATED: June 17, 2025 | Respectfully submitted, |
| CHAD MIZELLE<br>Acting Associate Attorney General | ELIANIS N. PÉREZ<br>Assistant Director |
| ABHISHEK S. KAMBLI<br>Deputy Associate Attorney General | */s/ Luz Maria Restrepo*<br>LUZ MARIA RESTREPO<br>Trial Attorney |
| BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division | United States Department of Justice<br>Office of Immigration Litigation<br>General Litigation and Appeals Section<br>Civil Division |
| YAAKOV M. ROTH<br>Principal Deputy Assistant Attorney General | P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 598-2443<br>Fax: (202) 305-7000<br>Email: luz.maria.restrepo@usdoj.gov |
| | *Attorneys for the United States* |