IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:25-cv-00028-GFVT |
| | : | |
| v. | : | Judge Gregory F. Van Tatenhove |
| | : | |
| KENTUCKY COUNCIL ON POSTSECONDARY EDUCATION, et al., | : | |
| | : | |
| | : | |
| Defendants.[1] | : | |

**PLAINTIFF'S OPPOSITION TO KENTUCKY STUDENTS FOR AFFORDABLE TUITION'S MOTION TO INTERVENE**

Plaintiff's case seeks invalidation of Kentucky regulation 13 Ky. Admin. Regs. 2:045 § 8(4)(a) (2025), contending that the regulation expressly and directly conflicts with federal immigration law because it enables an "undocumented alien" present in the United States to qualify for reduced tuition at public state colleges while requiring U.S. citizens from other states to pay higher tuition rates. *See* ECF No. 4. Despite the Parties' Joint Motion for Entry of a Consent Judgment agreeing that the regulation is preempted, the Kentucky Students for Affordable Tuition ("KSAT"), an alleged unincorporated association composed of college students without lawful immigration status attending public colleges and universities in Kentucky, seeks to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a). ECF No. 27-1 at 1 (KSAT seeks intervention "for the purpose of defending the validity of § 8(4)(a)."). In the alternative, KSAT seeks permissive intervention under Federal Rule of Civil Procedure 24(b),

---

[1] On August 22, 2025, the Court granted the Parties' Joint Stipulation of Dismissal and dismissed Defendant Andrew Beshear, Governor of the Commonwealth of Kentucky, from this lawsuit. ECF No. 23.

averring that "its claims and defenses share common questions of law and fact with the main action, and its intervention on behalf of parties affected by the outcome of this litigation will significantly contribute to the just and equitable resolution of the important issues at stake." *Id*.

This Court should deny KSAT's motion to intervene. First, KSAT lacks associational and organizational standing to pursue relief in this matter. Second, KSAT's motion to intervene is legally futile. Third, KSAT does not meet the requirements for intervention as a matter of right. Fourth, permissive intervention is not warranted. Because KSAT presents no grounds that would warrant a different legal outcome, its request should be denied.

## PROCEDURAL HISTORY

Plaintiff United States of America filed its Amended Complaint on June 23, 2025, asserting that 13 Ky. Admin. Regs. 2:045 § 8(4)(a) (2025) is preempted by federal immigration law, specifically 8 U.S.C. § 1623(a). ECF No. 4. On August 22, 2025, after discussions amongst the parties and determination by Defendants[2] that the challenged provision is preempted by federal law, the Parties filed a joint motion requesting that this Court enter an Order and Final Judgment declaring the challenged provision unconstitutional and invalid under the Supremacy Clause. ECF No. 24. The Court has not yet ruled on this motion.

On August 22, 2025, two months after the United States filed its Amended Complaint and after the Parties filed their joint motion, KSAT filed the instant Motion to Intervene. ECF No. 27.

## LEGAL STANDARD

In this circuit, a party seeking intervention as of right under Rule 24(a)(2) must show that: (1) the motion was timely; (2) the movant possesses "a substantial legal interest" in the case; (3)

---

[2] On August 14, 2025, the Parties filed a Stipulation and Joint Motion to Dismiss Defendant Andrew Beshear, Governor of the Commonwealth of Kentucky. ECF No. 16. On August 22, 2025, the Court dismissed Defendant Beshear from this lawsuit. ECF No. 23.

the movant's ability to protect its interest will be impaired without intervention; and (4) the existing parties inadequately represent the movant's interest. *United States v. Michigan*, 68 F.4th 1021, 1024 (6th Cir. 2023) (citing *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011)); *see also* Fed. R. Civ. P. 24(a)(2). If the movant fails to meet any one of the requisite criteria, the court must deny intervention as of right. *Michigan*, 68 F.4th at 1024.

With respect to whether a motion is timely, specifically, district courts "must consider 'all relevant circumstances' of a case, including: (1) the stage of the proceedings; (2) the purpose for the intervention; (3) the length of time that the movant knew or should've known of its interest in the case; (4) the prejudice to the original parties; and (5) any unusual circumstances militating for or against intervention." *Id.* (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)); *see also Pride v. Allstate Ins. Co.*, No. 10-13988, 2011 WL 692299, at *2 (E.D. Mich. Feb. 18, 2011). No one factor is dispositive, but rather the "determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Stupak–Thrall v. Glickman,* 226 F.3d 467, 472-73 (6th Cir. 2000).

Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, and if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Pride*, 2011 WL 692299, at *3. In exercising its discretion, the Court must also consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(3); *Pride*, 2011 WL 692299, at *3; *see also Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991). Furthermore, even if a party satisfies the requirements for permissive intervention, it does not mean the court has to allow it—the courts are given broad discretion when determining permission to intervene. *See generally Meyer Goldberg, Inc. of Lorain v. Goldberg*, 717 F.2d 294 (6th Cir. 1983).

# ARGUMENT

This Court should deny KSAT's motion to intervene because (1) it lacks associational and organizational standing, (2) intervention in this case is legally futile because Kentucky regulation 13 Ky. Admin. Regs. 2:045 § 8(4)(a) is expressly preempted by federal immigration law under 8 U.S.C. § 1623, and (3) KSAT has failed to demonstrate that the Court should allow it to intervene as of right or (4) as a permissive intervenor.

## I.    KSAT Lacks Standing to Intervene in this Lawsuit

A proposed intervenor must meet standing requirements under Article III of the United States Constitution if the proposed intervenor wishes to pursue relief not requested by a plaintiff. *See Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) (citing *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)). Article III limits federal court jurisdiction to actual cases and controversies. For an actual case and controversy to exist, the party seeking to litigate a dispute before a federal court must demonstrate standing. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992)). Article III standing specifically requires that a party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Chapman*, 940 F.3d at 304.

To establish injury in fact, a party must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560); *see also Chapman*, 940 F.3d at 304.

KSAT seeks to intervene in this lawsuit specifically to defend the "validity of § 8(4)(a)." ECF 27-1 at 5. But KSAT's aim is diametrically opposed to what Plaintiff seeks, which is to

4

invalidate § 8(4)(a) because it is preempted by 8 U.S.C. § 1623(a). As such, KSAT must establish standing to participate in this litigation because it pursues relief not requested by Plaintiff. *See Chapman*, 940 F.3d at 304. As further discussed below, however, KSAT is unable to establish standing.

        1. *KSAT Lacks Associational Standing to Intervene*

KSAT has failed to demonstrate that any of its members have standing to sue. KSAT bears the burden of establishing that, *inter alia*, "its members would otherwise have standing to sue in their own right[.]" *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021) (internal citation and internal quotation marks omitted). "When challenged by a court (or by an opposing party) concerned about standing, the party invoking the court's jurisdiction cannot simply allege a nonobvious harm, without more." *Wittman v. Personhuballah*, 578 U.S. 539, 545–46 (2016).

KSAT cites no authority for their contention that an increased price for a good or service constitutes an "injury in fact." *Spokeo, Inc.*, 578 U.S. at 338. Neither can they show that the price charged for college tuition is "fairly traceable," to the United States or Defendants in this case, or "likely to be redressed" by a favorable decision in this suit. *Id.* The colleges that KSAT's members attend are free to reduce tuition rates so that they are no longer "prohibitively high" as KSAT alleges. ECF 27-1 at 8. Additionally, in the wake of a decision in KSAT's favor by this Court, those same colleges could raise tuition rates *higher* so that, despite a ruling in their favor, KSAT's members may still be "forced to drop out of college or be unable to start their education at all." *Id.* at 9. Simply put, KSAT's alleged harm is not "traceable to the challenged conduct of the defendant," nor "likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338. Try as they might, KSAT cannot blame the parties in this suit for their inability to afford what

5

they concede are "prohibitively high" tuition rates at colleges that they chose to attend. ECF 27-1 at 8. It is also unclear that a voluntary choice to stop or not enter college courses because the student deems that the price is too high would constitute an injury: individuals are free to decide what amount of money an education is worth to them based on the resources available to them and the importance of the education in their estimation. If a student chooses not to pay the increased tuition rate, that is no injury but a rational response to price signals.

Furthermore, KSAT's motion to intervene and the exhibits attached to it contain no affidavits or any other evidence indicating that any of its members have standing. *See generally* ECF 27. KSAT merely asserts vague allegations that some of its undocumented members might not be able to afford the increased tuition rates, which could cause these individuals to withdraw from their degree programs at various Kentucky universities. *See* ECF 27-1 at 8; *see also id.* at 10 ("Movant seeks to intervene to protect the interests of its members, comprised of students who could be directly and adversely affected by the elimination of access to regular tuition rates."). However, the speculative and conjectural nature of KSAT's alleged potential harm, without more, fails to show the requisite injury in fact. *See Wittman*, 578 U.S. at 545–46; *see also Lujan*, 504 U.S. at 561; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[T]hreatened injury must be certainly impending to constitute injury in fact and . . . allegations of possible future injury are not sufficient.") (citations and internal quotation marks omitted). This lack of evidence warrants a denial of KSAT's motion to intervene because it has not sufficiently demonstrated, beyond speculative allegations, that its individual members would have standing.

   2.  *KSAT Lacks Organizational Standing to Intervene*

KSAT cannot meet the same standing test that applies to individuals, as it must, if it intends to assert organizational standing. *See Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer*

*Comm'n*, 389 F.3d 536, 544 (6th Cir. 2004). "The party seeking jurisdiction before a federal court bears the burden of showing these elements." *Chapman*, 940 F.3d at 304.

First, KSAT does not actually allege that it has suffered any injury. The brief in support of KSAT's motion to intervene merely contains allegations about how its members could potentially be injured because they could be forced to pay increased tuition rates, which in turn could cause them to choose to withdraw from their course studies. *See* ECF 27-1 at 8. KSAT goes on to discuss the alleged interest it has in defending the lawsuit, stating that it has "a direct, substantial interest in the outcome of this litigation because it will affect its members' ability to continue their education." *Id.* at 10 (citation omitted).

However, KSAT does not actually allege that *it* has suffered, or will suffer, any harm. *Summers v. Earth Island Institute*, 555 U.S. 488 (2009) (organizations did not retain standing to challenge regulations absent live dispute over their concrete application); *Memphis A. Philip Randolph Inst. V. Hargett*, 978 F.3d 378, 387 (6th Cir. 2020) (finding no organizational standing where organization alleged speculative harm only). KSAT professes its organizational purpose is to "advocat[e] for access to affordable higher education in Kentucky, including maintaining the state's regular tuition rates for Kentucky residents without lawful immigration status." ECF 27-1 at 5. But KSAT makes no allegation regarding how its purpose would be harmed by the decision here. In fact, KSAT remains free to promote and advocate for its preferred policy outcomes to the exact same extent as before. As the party seeking to invoke the jurisdiction of this Court, KSAT must show that it has standing, which in turn means that it must show that it has suffered some injury. *Lujan*, 504 U.S. at 561. But because it has asserted no injury on its own behalf, any intervention based on a theory of organizational standing fails. Alleged injuries to its members do not suffice for organizational standing.

7

Second, KSAT lacks standing to defend the regulation at issue in this case. Under Kentucky law, the Kentucky Attorney General and the Kentucky Council on Postsecondary Education ("CPE"), the agency which promulgated the regulation, are authorized to defend the state regulation at issue. Specifically, the Kentucky Attorney General, as "chief law officer of the Commonwealth of Kentucky and all of its departments, commissions, [and] agencies" has the authority to represent and advise Kentucky agencies in litigation, which would include litigation concerning the validity of a regulation. *See* Ky. Rev. Stat. Ann. § 15.020; *see also Com. ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 868 (Ky. 1974) (acknowledging that Ky. Rev. Stat. Ann. § 15.020 "imposes on the [Kentucky] Attorney General the duty to attend to . . . any litigation or legal business that any state officer, department, commissioner, or agency may have in connection with, or growing out of, his or its official duties[.]") (internal quotation marks omitted). Also under Kentucky law, the CPE is authorized to and charged with defining residency for the purpose of assessing in-state tuition rates. *See* Ky. Rev. Stat. Ann. § 164.020(8)(a). It did so when it promulgated 13 Ky. Admin. Regs. 2:045 § 8(4)(a). *See* Ky. Rev. Stat. Ann. § 164.020(28) (granting the CPE the power to promulgate administrative regulations). The CPE also has the power to hire counsel to defend it in litigation, including litigation concerning the regulations it promulgates. *See* Ky. Rev. Stat. Ann. § 164.020(27), (37).

Addressing an analogous situation, namely state laws, the Supreme Court has observed that "[a] State clearly has a legitimate interest in the continued enforceability of its own statutes." *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 277 (2022) (citation and internal quotation marks omitted). Moreover, the Supreme Court has "never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). Notably, the Court in

8

*Hollingsworth* explicitly rejected the notion that a private party may intervene to appeal a ruling declaring a state law unconstitutional absent independent bases for standing. *Id.*

The logic employed by the Supreme Court with respect to state statutes applies in this case where the authority to enforce and defend a regulation lies with either the Kentucky Attorney General or the CPE. In this respect it is critical to note that the Kentucky Attorney General issued an advisory opinion to the CPE concluding that "13 KAR 2:045 § 8(4)(a), is preempted by federal law," specifically 8 U.S.C. § 1623(a), and urged the CPE to "withdraw its regulation rather than litigate . . . a losing fight." ECF No. 11-2 at 3. To that end, Plaintiff United States and the CPE have filed a Joint Motion for Entry of Consent Judgment where both parties agree that "13 KAR 2:045, Section 8(4)(a) (eff. 6-22-2022), is preempted by 8 U.S.C. § 1623" and request the Court to enter a final judgment declaring as much and permanently enjoining said regulation. ECF No. 24 at ¶¶ 9-11.

Thus, KSAT seeks to defend and enforce a state regulation after the Kentucky Attorney General and the CPE have determined that it is preempted by federal law and sought resolution of this case on that basis. *See id.*; ECF No. 11-2; ECF 27-3. KSAT seeks to have the ability to defend the constitutionality of a state regulation when state and executive actors authorized to do so have chosen not to. This Court should not allow KSAT to step into the shoes of the Kentucky Attorney General and the CPE to assert an amorphous interest in defense of the challenged preempted regulation. *See generally Hollingsworth*, 570 U.S. at 706 (rejecting an intervenor's claim of standing because its interest in vindicating "the constitutional validity of a generally applicable California law" constituted the kind of "generalized grievance" that "is insufficient to confer standing."); *see also id.* at 713. KSAT's asserted interests amount to nothing more than a legally impermissible value interest in the litigation. Yet, "Article III standing," the Supreme Court has

9

stated, "is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Id.* at 707 (internal citations and quotations omitted). Nor can a proposed intervenor "attempt to invoke [the judicially cognizable interest] of someone else" if they do not have an independent interest of their own. *Id.* at 708. Accordingly, KSAT lacks organizational standing to intervene in this case.

## II. Intervention In This Case Is Legally Futile

Intervention in this case would be futile because there is no legal merit to KSAT's proposed claims. While the Sixth Circuit has not addressed a futility exception to intervention, *see Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, No. 11-13101, 2012 WL 1598154, at *4 (E.D. Mich. May 7, 2012) and *Dauscha v. UP Commc'ns Servs. LLC*, No. 13-CV-50-HSM-SKL, 2013 WL 6388566, at *3 (E.D. Tenn. Dec. 6, 2013), it has not expressly rejected it. *See Stotts v. Memphis Fire Department*, 679 F.2d 579, 582 (6th Cir. 1982) (Sixth Circuit noting that district court below properly considered, as one factor, that relief sought was unavailable as a matter of law before denying motion to intervene). Other circuits employ a futility exception when necessary and this Court should as well. *See, e.g.*, *King v. Flower Foods, Inc.*, No. 21-579-BAJ-SDJ, 2023 WL 2731041, at *2 (M.D. La. Mar. 30, 2023) ("If the intervening party's legal claim fails on the merits under clearly established law or a prior decision in the case, the motion to intervene can be dismissed as futile.") (citation and internal quotation marks omitted); *State Farm Mut. Auto. Ins. Co. ex rel. Holley v. U.S.*, No. 02-1799, 2003 WL 1873089, at *3 (E.D. La. Apr. 10, 2003) (finding the court "bound . . . to conclude that it is appropriate to deny a motion to intervene when the intervenor seeks to raise claims that are time barred") (internal citations omitted); *In re Am. White Cross, Inc.*, 269 B.R. 555, 558 (D. Del. 2001) (upholding bankruptcy court's order denying motion to intervene as futile because proposed claims were without merit); *United States v. Glens Falls*

*Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (upholding district court's denial of motion to intervene on futility grounds); *Equal Employment Opportunity Commission v. Century I, L. C.*, 142 F.R.D. 494 (D. Kan. 1992) (denying motion to intervene to the extent the employee sought to assert claims for unlawful discharge under 42 U.S.C. § 1981 and the Civil Rights Act of 1991, holding that intervention would be futile, as a cause of action under those statutes was not recognized under the case law within the circuit); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988) (finding that Rule 24(a) requires intervenors to have a legally sufficient claim); *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 501 (3d Cir. 1982) (holding that "[i]n the circumstances of this case, it would be futile to allow intervention in order to present grounds on appeal which we have already rejected").

Recently, as noted in Plaintiff's Notice of Supplemental Authority, *see* ECF No. 28, the United States District Court for the Northern District of Texas denied a motion to intervene that addresses the very issue that is currently before this Court. *See United States v. Texas*, No. 7:25-cv-00055-O (N.D. Tex. Aug. 15, 2025). There, the court found intervention was futile because, as the United States argues here, Section 1623(a) expressly preempted the challenged in-state tuition statutes, deeming the intervenors' motions futile because they failed to state a claim under Rule 12(b)(6). ECF No. 28-2 at 7, 11; *see Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (defining futility as the failure "to state a claim upon which relief could be granted."). The United States District Court for the Eastern District of Oklahoma reached the same conclusion as the court in *Texas*, finding that similar Oklahoma in-state tuition provisions "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid." *United States v. Oklahoma*, No. 6:25-cv-00265-RAW-DES (E.D. Okla. Aug. 5, 2025), Order and Final Consent Judgment, ECF No. 28-5, Exhibit C; *see also id.* at

11

Exhibit B, Report and Recommendation (holding that 8 U.S.C. 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria.").

Like the *Texas* court, this Court should deny KSAT's motion to intervene because 13 Ky. Admin. Regs. 2:045 § 8(4)(a) is expressly preempted by federal immigration law under 8 U.S.C. § 1623. State law must give way to federal law when a federal statute contains an express preemption provision. *See Arizona v. United States*, 567 U.S. 387, 399 (2012). When the statute includes an express preemption provision, "the task of statutory construction must in the first instance focus on the plain wording of the clause[s], which necessarily contain[ ] the best evidence of Congress's pre-emptive intent." *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522 (6th Cir. 2001) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

Federal immigration law expressly preempts the challenged Kentucky regulation. Section 1623(a) specifically provides that:

> [A]n alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). Section 1623(a) thus prohibits illegal aliens from being eligible for any postsecondary education benefit, such as reduced in-state tuition, on the basis of residence within the state unless a U.S. citizen is eligible for that benefit as well, regardless of residency.

The challenged Kentucky regulation directly conflicts with Section 1623(a) in that it allows illegal aliens to qualify for in-state tuition based solely on Kentucky residency, while explicitly denying resident tuition rates to U.S. citizens who do not meet Kentucky residency requirements.

The CPE is authorized to establish different tuition rates for resident and nonresident students. 13 Ky. Admin. Regs. 2:045 § 2(2). In exercising this authority, the CPE, through its published policy, requires nonresident students to pay higher tuition than Kentucky residents. *See* Council Postsecondary Education, *Tuition and Mandatory Fee Policy Academic Year 2025-2026*, 3 (2025) https://cpe.ky.gov/policies/finance/tuitionandmandatoryfeespolicy.pdf (last visited Sept. 10, 2025).

Under 13 Ky. Admin. Regs. 2:045 § 1(10), a "Kentucky resident" is defined as a "person determined by an institution for tuition purposes to be domiciled in, and a resident of, Kentucky as determined by this administrative regulation." Under 13 Ky. Admin. Regs. 2:045 § 1(11), a "nonresident" is defined as a person who is either domiciled outside Kentucky, currently maintains legal residence outside the state, or otherwise fails to qualify as a Kentucky resident under the regulation. Critically, Ky. Admin. Regs. 2:045 § 8(4)(a) provides that "[a] person shall be a Kentucky resident for the purpose of this administrative regulation if the person graduated from a Kentucky high school and . . . is an undocumented alien." Thus, Section 8(4)(a) automatically allows for illegal aliens to qualify as Kentucky residents (and thus reduced in-state tuition) while U.S. citizens are excluded from being classified as Kentucky residents if they meet the definition of "nonresident" under 13 Ky. Admin. Regs. 2:045 § 1(11).[3] Consequently, Section 1623(a) clearly and expressly preempts Section 8(4)(a). *See Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)

---

[3] Kentucky has reciprocity agreements with Kentucky, Indiana, Ohio, and West Virginia that allow individuals from those states to benefit from lower tuition rates. *See* 13 Ky. Admin. Regs. 4:010; Council Postsecondary Education, *Our Work, Tuition Waivers, Reciprocity Agreements and Other Discounts*, https://cpe.ky.gov/ourwork/tuitiondiscount.html (last visited Sept. 9, 2025). However, the existence of these allowances and agreements does not undermine the fact that the challenged Kentucky regulation is unconstitutional because it impermissibly allows illegal aliens to be eligible for postsecondary education benefits while excluding U.S. citizens from other states from eligibility for the same on the basis of residence in a state. 8 U.S.C. § 1623(a). *See Arizona*, 567 U.S. at 399 ("The Supremacy Clause gives Congress the power to preempt state law.").

13

(explaining that under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *United States v. Zheng*, 87 F.4th 336, 344 (6th Cir. 2023) ("When Congress clearly expresses its intent to repeal or to preempt, we must respect that expression.") (citation and internal quotation marks omitted).

The Fifth Circuit has already held as much in *Young Conservatives of Texas Foundation v. Smatresk*, stating that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th 304, 312-13 (5th Cir. 2023). *See also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating, in the context of reduced in-state tuition, that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit").

In addition to the preclusive effect of Section 1623(a), Ky. Admin. Regs. 2:045 § 8(4)(a) is preempted because it tries to do by regulation what Congress has required be done only by statute. The Personal Responsibility and Work Opportunity Act ("PRWORA") makes certain aliens ineligible for any "State or local public benefit." 8 U.S.C. § 1621(a). Included in the statute's definition of "State or local public benefit" is "any . . . postsecondary education . . . benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government." *Id*. § 1621(c). Resident tuition is a postsecondary education benefit offered to illegal aliens in Kentucky under Ky. Admin. Regs. 2:045 § 8(4)(a). Congress included an exception to this prohibition on a State's provision of postsecondary education benefits for illegal aliens: if a state wants to make illegal aliens eligible for benefits, it may do so, but "only through the enactment of a state law after August 22, 1996, which affirmatively provides for such

14

eligibility." 8 U.S.C. § 1621(d). Kentucky, however, has passed no such law. The statutory language and provision enabling the CPE to create the challenged regulation, which was admittedly passed after 1996, partly defines what a Kentucky resident is for tuition purposes. Ky. Rev. Stat. Ann. § 164.020(8)(a) (eff. Jul. 13, 2004) ("In defining residency, the council shall classify a student as having Kentucky residency if the student met the residency requirements at the beginning of his or her last year in high school and enters a Kentucky postsecondary education institution within two (2) years of high school graduation."). But it never "affirmatively" provides illegal aliens with eligibility for postsecondary education benefits as required by PRWORA. *See id.*; *see also* 8 U.S.C. § 1621(d). Pursuant to the Federal Government's authority over immigration, Ky. Admin. Regs. 2:045 § 8(4)(a) is unlawful because it attempts to do by regulation what Congress has deemed permissible only by statute.

Moreover, as discussed *supra* at Argument § I.2., the Kentucky Attorney General issued an advisory opinion in the form of a letter addressed to the CPE urging it to withdraw Section 8(4)(a) because he concluded, after detailing legal analysis, that the regulation was preempted by Section 1623(a). ECF No. 11-2 at 3. Additionally, after careful examination of the law and the issues, the CPE determined that its defense of Section 8(4)(a) would be futile, concluding that the best course of action was settlement. ECF No. 24.

Consequently, intervention based on opposition to preemption would be futile. KSAT's intervention falters on Section 1623(a), and independently on Section 1621(d). The Court should therefore deny KSAT's motion to intervene on either or both of these grounds. Additionally, as discussed *supra* at Argument § I, KSAT lacks standing to intervene, thus rendering any intervention entirely without effect.

**III.   KSAT Fails To Meet The Requirements For Intervention As Of Right**

Moreover, even if this Court were to determine that KSAT has standing and that their request to intervene is not legally futile, this Court should still deny their motion because KSAT fails to satisfy the prerequisite requirements for intervention as of right.

1. *KSAT's Motion is Untimely*

    a. <u>KSAT Waited Too Long To File Its Motion</u>

In determining the timeliness of an application for intervention of right, Courts in this jurisdiction consider the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case. *Michigan*, 68 F.4th at 1024. Here, a considerable length of time—about two months—had passed from the time Plaintiff filed its Amended Complaint on June 23, 2025 (ECF No. 4) to the time KSAT filed its motion to intervene on August 22, 2025 (ECF No. 27). The timing suggests that KSAT employed a "wait-and-see" approach because KSAT immediately filed its motion to intervene after the remaining Parties in this litigation moved the Court for an Order and Final Judgment declaring the challenged regulation unconstitutional and invalid under the Supremacy Clause. *cf. Stotts*, 679 F.2d at 584, n.3 (finding that intervenor demonstrated diligence when they promptly sought the right to intervene when they became aware of the change in venue rather than employing a "wait-and-see" approach); *compare* ECF No. 24 (Parties' Joint Motion for Entry of Consent Judgment) *with* ECF No. 27 (KSAT's Motion to Intervene).

    b. <u>KSAT's Motion is Untimely Because It Would Prejudice the Existing Parties</u>

KSAT's motion to intervene is also untimely because KSAT's failure to promptly file its motion would now prejudice the Parties in this litigation. *Michigan*, 68 F.4th at 1024. As discussed *supra* at Argument § I.2, the proper entities to defend the regulation at issue in this case would be either the Kentucky Attorney General, as the "chief law officer" of Kentucky, or the CPE. *See* Ky.

16

Rev. Stat. Ann. §§ 15.020, 164.020; *Paxton*, 516 S.W.2d at 868. Yet, both the Kentucky Attorney General and the CPE have concluded that the regulation at issue in this litigation, 13 Ky. Admin. Regs. 2:045 § 8(4)(a), is preempted by federal law. The Kentucky Attorney General found that "Section 1623 plainly prohibits state regulations that benefit undocumented aliens and not citizens or nationals, so it expressly preempts [Section] 8(4)(a)" and urged the CPE to withdraw the regulation. ECF No. 11-2 at 3. The CPE, after due consideration of the issue, entered into a Joint Motion for Entry of Consent Judgment with Plaintiff, agreeing that Section 8(4)(a) indeed is preempted by Section 1623(a) and calling on this Court to enter a permanent injunction prohibiting the CPE, Defendant Aaron Thompson (President of the CPE), and their successors, agents, and employees, from enforcing the offending regulation. ECF No. 24. KSAT, which has no authority under any law to defend or enforce the regulation, cannot now override these decisions made by Kentucky Government entities that do have such authority and, after assessing the legality, chose not to defend the challenged regulation; allowing KSAT to do so now would be in conflict with their decisions, and prejudice the Parties' considered decision to settle this lawsuit.

## 2. CPE Adequately Represents KSAT's Interests

KSAT has also not met its burden to demonstrate that the CPE inadequately represents its interest. *See Goldberg*, 717 F.2d at 293 ("the applicant for intervention bears the burden of demonstrating inadequate representation"); *Michigan*, 68 F.4th at 1024. Adequate representation is presumed "when the proposed intervenor and a party to the suit (especially if it is the state) have the same ultimate objective." *Wade v. Goldschmidt*, 673 F.2d 182, 186 (7th Cir. 1982).

KSAT fails to show that it has an objective different from that of the CPE, which is a party to the suit. Government agencies, to include state agencies, clearly have an interest in the enforceability of regulations they promulgate. *See generally California Dump Truck Owners Ass'n*

17

*v. Nichols*, 924 F. Supp. 2d 1126, 1147 (E.D. Cal. 2012), *aff'd*, 778 F.3d 1119 (9th Cir. 2015), *withdrawn from bound volume, and aff'd*, 784 F.3d 500 (9th Cir. 2015) ("[T]he EPA has a strong interest in defending and enforcing air pollution control laws it approved and which are federal law.") (citation and internal quotation marks omitted); *see also Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 277 (2022) (stating, in the context of a state statute, that "[a] State 'clearly has a legitimate interest in the continued enforceability of its own statutes.") (citation and internal quotation marks omitted).

Here, the CPE has an interest in upholding the legal validity of a regulation that it took pains to promulgate. The regulation at issue—Section 8(4)(a)—provides a right; as such, the CPE and KSAT have the "same ultimate objective," which is to protect that right because the CPE was the agency that created that right in the first place. *Goldschmidt*, 673 F.2d at 186. But, after full consideration of the preemption issues this lawsuit raises and after receiving an advisory opinion by the Kentucky Attorney General urging the CPE to withdraw the regulation because it violates the U.S. Constitution, the CPE has opted to join Plaintiff in requesting that the Court find the regulation preempted and enjoin its enforcement. ECF No. 24. KSAT's disagreement with CPE's decision to settle this lawsuit is really a disagreement in litigation tactics, which the CPE is fully within its power to engage in as the entity with the proper authority to enforce and defend Section 8(4)(a). *Jansen*, 904 F.2d at 343 (indicating that a mere disagreement over litigation strategy is insufficient to demonstrate inadequate representation). The Court should thus deny KSAT's motion to intervene.

**IV.    Lastly, the Court should deny KSAT's request for permissive intervention.**

A court may allow permissive intervention upon a timely motion if the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed.

R. Civ. P. 24(b)(1)(B). If the motion is timely and shares at least one common question of law or fact, the court must then consider whether intervention would cause "undue delay or prejudice" to the original parties, and "any other relevant factors." *See* Fed. R. Civ. P. 24(b)(3); *Michigan*, 424 F.3d at 445. Because the decision is *"dictated by the particular circumstances of the case,"* the court "retains broad discretion to exclude additional parties—even parties presenting common questions of law or fact—based on the totality of the circumstances." *Buck v. Gordon*, 959 F.3d 219, 226 (6th Cir. 2020) (emphasis added).

It is well within this Court's discretion to deny KSAT permissible intervention on KSAT's lack of standing alone. As discussed *supra* at Argument §§ I and II, KSAT wishes to intervene in a case where it lacks standing and any relief because the challenged regulation is preempted by federal law. The court should not grant KSAT permissive intervention relief.

Moreover, as discussed *supra* at Argument § III, granting permissive intervention would greatly prejudice the parties because it is untimely and would disturb the State's ability, through its Attorney General and the CPE, to choose not to enforce and defend a regulation they have deemed "is preempted by federal law," ECF No. 11-2 at 3, as well as the government's ability to ensure a preempted regulation is enjoined.

This case does not turn on factual issues or the development of a record. Instead, it presents a straightforward legal issue that the parties resolved after properly concluding that the federal statute preempted the state education regulation. KSAT cannot change this legal conclusion by describing sympathetic situations its members might be in. *See Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.* 940 F.2d 117, 120–121 (5th Cir. 1991) (intervention denied where intervenor brought no unique arguments and the principles of contract interpretation would yield the same result, regardless of the intervention); *United States v. Texas*, No. 7:25-cv-00055-O (N.D.

Tex. Aug. 15, 2025) (denying intervention after finding the request was futile because Section 1623(a) expressly preempted the challenged in-state tuition statutes). For all these reasons this Court must deny permissive intervention.

Wherefore, the Court should deny KSAT's motion to intervene.

| | |
|---|---|
| DATED: September 12, 2025 | Respectfully submitted, |
| Chad Mizelle<br>Acting Associate Attorney General | Elianis N. Perez<br>Assistant Director |
| Abhishek S. Kambli<br>Deputy Associate Attorney General | /s/ Luz Maria Restrepo<br>Luz Maria Restrepo<br>Trial Attorney |
| Brett A. Shumate<br>Assistant Attorney General<br>Civil Division | United States Department of Justice<br>Office of Immigration Litigation<br>General Litigation and Appeals Section<br>Civil Division |
| Yaakov M. Roth<br>Principal Deputy Assistant Attorney General | P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 598-2443 |
| Sean Skedzielewski<br>Counsel to Assistant Attorney General | Fax: (202) 305-7000<br>Email: luz.maria.restrepo@usdoj.gov |
| | *Attorneys for the United States* |

## CERTIFICATE OF SERVICE

I certify that on the 12th day of September, 2025, the foregoing was electronically filed via the Court's CM/ECF system, which will provide electronic notification to all counsel of record.

/s/ Luz Maria Restrepo
Luz Maria Restrepo