**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**FRANKFORT DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.

AARON THOMPSON, Commissioner
of Education for the Commonwealth of
Kentucky, in his official capacity; COUNCIL ON
POSTSECONDARY EDUCATION

                Defendants,

and

Kentucky Students for Affordable Tuition.

                Defendant-Intervenor.

Case No.:     3:25-cv-00028

## DEFENDANT-INTERVENOR KENTUCKY STUDENTS FOR AFFORDABLE TUITION'S RESPONSE IN OPPOSITION TO JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT

For decades, the challenged regulation—13 Ky. Admin. Regs. 2:045 § 8(4)(a) ("Section 8(4)(a)")—has enabled the members of Kentucky Students for Affordable Tuition ("KSAT") and countless other students to afford higher education in Kentucky. These students relied on this long-standing law when deciding to attend Kentucky colleges and universities. Many students without lawful immigration status, such as KSAT's members, come from low-income backgrounds and are ineligible for federal student aid. If Section 8(4)(a) is invalidated, as proposed by the United States, the Council on Postsecondary Education ("CPE") and its

1

president Dr. Aaron Thompson, (collectively, "Moving Parties"), it would impose severe financial hardship on these students and jeopardize their ability to remain enrolled.

The United States seeks to inhibit undocumented students' access to affordable higher education not only in Kentucky, but across the nation. It has filed six other lawsuits that are nearly identical to this one. *United States v. Texas*, No. 7:25-cv-00055 (N. D. Tex. filed June 4, 2025); *United States v. Walz et al.*, No. 0:25-cv-02668 (D. Minn. filed June 25, 2025); *United States v. Oklahoma*, No. 6:25-cv-00265 (E.D. Okla. filed Aug. 5, 2025); *United States v. Illinois*, No. 3:25-cv-01691 (S.D. Ill. filed Sept. 2, 2025); *United States v. California*, No. 2:25-at-01612 (E.D. Ca. filed Nov. 20, 2025); *United States v. Virginia*, No. 3:25-cv-01067 (E.D. Va. Filed December 29, 2025).[1] The United States has failed to provide affected third parties notice of these lawsuits and, in three of these cases, subsequent proposed consent judgments. In fact, the United States—in violation of due process—has purposely fought to prevent *any* third parties from being heard. *See Texas*, 7:25-cv-00055 (N.D. Tex. at R. 48; *Oklahoma*, 6:25-cv-00265 (E.D. Okla. at R. 19).

The Supreme Court has cautioned courts about litigants who "select as their defendants those individual officials they consider most sympathetic to their cause or most inclined to settle favorably and quickly." *Berger v. N.C. State Conference of the NAACP*, 597 U.S. 179, 191–92 (2022). When that happens, courts run the risk of basing their decisions on "hobbled litigation rather than a full and fair adversarial testing." *Id.* Defendants Dr. Aaron Thompson and the CPE filed a Joint Motion for Entry of Consent Judgment with the United States instead of defending Kentucky's regulation. Without adequate consideration of the issues, they propose a consent

---

[1] Texas and Oklahoma declined to defend their own laws, and they were enjoined via consent judgment. *Texas*, No. 7:25-cv-00055 (N.D. Tex. June 4, 2025) (order and final judgment declaring Texas law unconstitutional and permanently enjoining its enforcement); *Oklahoma*, No. 6:25-cv-00265 (E.D. Okla. Aug. 29, 2025) (order and final judgment declaring Oklahoma law unconstitutional and permanently enjoining its enforcement).

judgement that would prevent undocumented students from paying tuition rates equivalent to those paid by most students in Kentucky ("regular tuition rates"). The Court, however, has permitted KSAT to intervene to defend the validity of the challenged regulation. [R. 38].

The United States' desire to insulate these cases from judicial review makes sense; its claim of preemption is constitutionally infirm. Section 1623(a)—the federal statute the United States relies on—violates principles of federalism and intrudes on state sovereignty in education. Education is a domain reserved to the states. Yet, the federal statute dictates when and how states may extend education benefits to their residents and to non-residents from other states. Such an intrusion violates the Tenth Amendment. Even without reaching the Tenth Amendment issue, the United States' claim still fails. The challenged regulation does not violate the federal statute; it does not grant regular tuition rates "on the basis of residence." *See* 8 U.S.C. § 1623(a).

The proposed consent judgment is both unfair and unreasonable given the United States' unlikelihood of success on the merits and the inevitable severe financial hardship to students enrolled at Kentucky colleges and universities. KSAT respectfully requests that the Court deny the Joint Motion for Entry of Consent Judgment.

## I.      STATEMENT OF THE FACTS

The Kentucky Council on Postsecondary Education ("CPE") has authority to determine tuition rates for Kentucky's public colleges and universities. Ky. Rev. Stat. Ann. § 164.020(8). Exercising this authority, CPE "may require a student who is neither domiciled in, nor a resident of, Kentucky… to pay a higher level of tuition than resident students." 13 Ky. Admin. Regs. 2:045 § 2(2). In 1991, CPE promulgated 13 Ky. Admin. Regs. 2:045 ("Tuition Assessment Regulation."), which determines tuition rates at public colleges and universities in Kentucky.

CPE amended the Tuition Assessment Regulation in 2002 to specify that "a dependent or independent person who graduates from a Kentucky high school and who is an undocumented alien…shall be a Kentucky resident for the purpose of this administrative regulation." *See* 29 Ky. Admin. Reg. 749-751 (September 2002). This amendment is codified as 13 Ky. Admin. Regs. 2:045 § 8(4)(a) ("Section 8(4)(a)" or the "challenged regulation")), which provides that "A person shall be a Kentucky resident for the purpose of this administrative regulation if the person graduated from a Kentucky high school and . . . [i]s an undocumented alien."

Since its enactment over a quarter of a century ago, the challenged regulation has enabled countless students to afford higher education in Kentucky regardless of immigration status. The regulation has been unchallenged in a court for that whole time until this case. On June 23, 2025, the United States filed an amended complaint against Andrew Beshear in his official capacity of Governor of Kentucky, the Kentucky Council on Postsecondary Education ("CPE") and its president, Dr. Aaron Thompson, to enjoin the challenged regulation. The United States' sole claim for relief alleges that the challenged regulation is expressly preempted by 8 U.S.C. § 1623(a). [R. 4 at 13].

Section 1623(a) is part of the 1996 Illegal Immigration Reform and Immigrant Responsibility Act, and, as it relates to this action, states the following:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

On August 22, 2025, instead of defending its own regulation, CPE and Defendant Thompson joined the United States (the "Moving Parties")[2] in filing a Joint Motion for Entry of Consent Judgment. [R. 24]. The Moving Parties asked the Court to enter a final judgment declaring that the challenged regulation—13 Ky. Admin. Regs. 2:045 § 8(4)(a)—violates the Supremacy Clause of the Constitution, and to issue a permanent injunction prohibiting the CPE, Defendant Thompson, and their successors, agents, and employees from enforcing the challenged regulation. [R. 25].

Upon learning of the Moving Parties' motion, Kentucky Students for Affordable Tuition promptly moved to intervene in this action to defend the challenged regulation.  [R. 27-1]. The Court granted KSAT's motion on November 19, 2025. [R. 38].

## I.      LEGAL STANDARD

When parties move to enter a consent decree, "[j]udicial approval of [the] settlement agreement places the power and prestige of the court behind the compromise struck by the parties." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983).[3] A court "should not blindly accept the terms of a proposed settlement";  it must independently review the fairness of the proposed decree. *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).

Because a consent decree is a judicial act, a court may not approve a consent decree "which is illegal, a product of collusion, or contrary to the public interest." *Williams*, 720 F.2d at 920. "Before entering a consent decree, a district court must determine, among other things, that the agreement is fair, adequate, and reasonable, as well as consistent with the public interest."

---

[2] Governor Beshear and the United States filed a joint motion to dismiss Governor Beshear as a defendant on August 14, 2025, [R. 16], which was granted on August 22, 2025. [R. 23].
[3] There is no substantive difference between a "consent judgment" and a "consent decree." *Compare Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir. 1983) *with East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 464-65 (6th Cir. 2011). Both are "essentially a settlement agreement," but "also a final judicial order." *Williams*, 720 F.2d at 920.

*Pereira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 872 (6th Cir. 2015). Courts apply these procedures "to a broad range of cases." *Tennessee Ass'n of Health Main. Organizations, Inc. v. Grier*, 262 F3d 559, 566 n.3 (6th Cir. 2001) (collecting cases). If the parties to the proposed judgment have failed to give notice or the decree is otherwise unfair, unreasonable, or against the public interest, it should not be entered or preliminarily approved. *See Williams*, 720 F.2d at 921.

## II.   ARGUMENT

### A.  The Proposed Judgment is Unreasonable

The reasonableness of a consent decree is an issue of law to be determined by a court. *See Baker v. City of Detroit*, 504 F. Supp. 841 (E.D. Mich. 1980), judgment aff'd, 704 F.2d 878 (6th Cir. 1983), on reh'g, 712 F.2d 222 (6th Cir. 1983). In determining whether a proposed settlement is procedurally fair a court "should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *United States v. Grand Rapids, Michigan,* 166 F.Supp.2d 1213, 1219 (W.D. Mich. 2000) (quoting *United States v. Cannons Engineering Corp.*, 720 F.Supp. 1027, 1040 (D. Mass. 1989), affd., 899 F.2d 79 (1st Cir. 1990) (internal quotations omitted)). However, the "most important" factor is "a comparison of the strengths of plaintiffs' case" (*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)) "against the amount and form of the relief offered in the settlement." *Williams*, 720 F.2d at 922 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (internal quotations omitted). Here, the proposed consent judgement seeks to completely invalidate the challenged regulation—jeopardizing countless third parties' access to higher education—even though the United States cannot prevail because the challenged regulation does not violate the federal statute in question.

### a. The United States' Claim Fails

### i.  The Challenged Regulation Complies with Section 1623(a) Because it Does Not Grant Benefits on the Basis of Residence

"When a federal law contains an express preemption clause, [courts] focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (internal quotations and citations omitted). Section 1623(a) does not categorically render undocumented students ineligible for regular tuition rates. It states that a person without lawful immigration status cannot be "eligible *on the basis of residence* within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . ." 8 U.S.C. § 1623(a) (emphasis added). The plain language of Section 1623(a) only prohibits benefits based on residence. It is a cardinal rule of statutory construction that courts must give effect to each word in a statute. *Artis v. District of Columbia*, 583 U.S. 71, 83 n. 8 (2018). Thus, Section 1623(a)'s "reference to the benefit being on the basis of residence must have some meaning." *Martinez v. Regents of the Univ. of California*, 241 P.3d 855, 864 (Cal. 2010). "If Congress had intended to prohibit states entirely from making unlawful aliens eligible for in-state tuition, it could easily have done so." *Id.* Section 1623(a) is silent to any such intent.

The challenged regulation complies with the congressional intent of Section 1623(a). It does not grant regular tuition rates based on *residence*. Congress defined "residence" as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact." 8 U.S.C. § 1101(a)(33).[4] "When a statute includes an explicit definition of a term, [courts] must follow that definition." *Van Buren v. United States*, 593 U.S. 374, 387

---

[4] 8 U.S.C. § 1641(a) provides that "the terms used in this chapter have the same meaning given such terms in section 101(a) of the Immigration and Nationality Act [8 U.S.C. §1101(a)]." This includes Section 1623(a). *Id.*

7

(2021) (internal quotations omitted). Thus, Section 1623(a) only preempts state law where a state law grants regular tuition rates to students without lawful immigration status based on their "actual dwelling place in fact." 8 U.S.C. § 1101(a)(33). The challenged regulation does not.

Where an undocumented student makes their "actual dwelling place in fact" is immaterial to their eligibility under the challenged regulation. 8 U.S.C. § 1101(a)(33). An undocumented student qualifies for regular tuition rates if they "graduated from a Kentucky high school." 13 Ky. Admin. Regs. 2:045 § 8(4)(a). That requirement says nothing as to where an undocumented student must make their "actual dwelling place in fact." 8 U.S.C. § 1101(a)(33).

The Tuition Assessment Regulation's categorization of an undocumented student that graduated from a Kentucky high school as a "Kentucky resident" does not mean that the regulation provides a benefit on the basis of residence.[5] This conclusion is bolstered by the fact that for both citizens and noncitizens alike, being classified as a "Kentucky resident" for "*tuition assessment purposes*" (13 Ky. Admin. Regs. 2:045 § 1(5) (emphasis added)) does not equate to them making Kentucky their "actual dwelling place in fact"" 8 U.S.C. § 1101(a)(33). Certain citizen students may be eligible for regular tuition rates "without regard" to their residence. 8 U.S.C. § 1623(a). *See* 13 Ky. Admin. Regs. § 7(4) (citizens eligible for benefits under Post 9/11 Veterans Education Assistance Act of 2008 qualify); *Id.* at § 9 (beneficiaries of Kentucky Educational Savings Plan Trust qualify). The challenged regulation therefore "cannot be deemed

---

[5] Even if the Court concludes the label of "Kentucky resident" is a residency requirement, Section 8(4)(a) is not preempted because the qualification is not solely based on residency. The plain language of Section 1623(a) is unambiguously narrow, and Congress did not use broader phrasing that would have explicitly extended the prohibition beyond benefits based *solely* on residence. Further under the canon of *expressio unius est exclusio alterius* (the "mention of one thing implies the exclusion of another thing"), Congress only identified *residency* as a prohibited criterion. Its omission of any language precluding benefits conditioned on other criteria, like the high school graduation requirement of Section 8(4)(a), indicates that Congress did not want the statute to reach state laws that confer benefits on criteria other than or in addition to residency. Longstanding principles of severability confirm that Section 1623(a) was not intended to invalidate laws in their entirety merely because they incorporate residency among other criteria. *See Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984).

to be based on residence for the simple reason that many *nonresidents* may qualify for it."
*Martinez*, 214 P.3d at 864 (emphasis in original).

A high school graduation requirement is not the same as a residence requirement. Section 1623(a) prohibits states from offering postsecondary education to undocumented immigrants on the basis of "residence"; not something "like" residence, a "proxy" for residence, or a classification that would include "too many" residents. That interpretation would inappropriately "add provisions to a federal statute," (*Alabama v. North Carolina*, 560 U.S. 330, 352 (2010)) and this Court should "resist[] reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997).

Kentucky has an independent interest in providing benefits to Kentucky high school graduates. About half of all students who graduated from Kentucky high schools in 2023 immediately enrolled in public postsecondary education institutions in Kentucky.[6] It is logical for CPE to grant regular tuition rates to Kentucky high school graduates because they are familiar with the curriculum and make up a large percentage of students enrolling in Kentucky colleges and universities. By requiring undocumented students to graduate from a Kentucky high school to be eligible for regular tuition rates, Section 8(4)(a) demonstrates that intent.

Because the challenged regulation bases eligibility for undocumented students on graduation from a Kentucky high school—rather than residence—Section 8(4)(a) complies with the federal statute. *See Martinez*, 214 P.3d at 864 (finding that because state law allowed undocumented students to qualify for regular tuition rates based on criteria other than residence "Section 1623 does not govern.").[7]

---

[6] *See* Council on Postsecondary Education, 2025 Progress Report, available at
https://cpe.ky.gov/data/reports/2025progressreport.pdf (last visited January 7, 2026).
[7] If the Court were to conclude the regulation requires undocumented students to both graduate from a Kentucky high school and reside in Kentucky in order to be eligible, it should sever the offending residency requirement

### ii.       Section 1623(a) Violates the Tenth Amendment

If the Court concludes the challenged regulation provides benefits on the basis of residence, it must grapple with the constitutional issues Section 1623(a) presents. The constitutional questions arise because Section 1623(a) does not simply regulate immigration or the conduct of private individuals. Instead, it directs state legislatures to structure their own laws in accordance with federal preferences—dictating when and how states may extend educational benefits, in particular to non-resident citizens. In doing so, Congress has overstepped the powers granted to it by the Constitution and infringed on the rights the Tenth Amendment expressly reserves to the states.

### 1.       The Federal Government Cannot Tell the State How to Legislate

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. As the Supreme Court has made clear, "the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States*, 505 U.S. 144, 157 (1992). "[T]hat is why our system of government is said to be one of 'dual sovereignty.'" *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). Thus, in order for a statute to have preemptive effect, it "must be best read as one that regulates private actors." *Id.* at 477.

A statute cannot be "best read" as regulating private actors if it does not "confer any federal rights on private actors...[n]or...impose any federal restrictions on private actors." *Id.* at

---

because courts should only strike down the unconstitutional provisions of a law. *See Lamar Co., LLC v. Lexington-Fayette Urban Cty. Gov.*, 677 F.Supp. 673, 690 (E.D. Ky. 2023).

480. Section 1623(a) does neither. There is no federal right to a certain tuition rate at a *state's* public postsecondary educational institutions because education is a core state function. Section 1623(a) also does not place any federal restrictions on undocumented students because it does not alter what undocumented students can or cannot do.

Congress decided to allow undocumented students to receive educational benefits *only if* states make all U.S. citizens or nationals also eligible for those benefits. By adding that requirement, states that want to provide educational benefits to undocumented students based on their residency within the state, must change their laws to also provide those same benefits to all United States citizens or nationals. *See* 8 U.S.C. § 1623(a). Thus, when Section 1623(a) prohibits a state from making undocumented immigrants eligible "unless a citizen or national of the United States is eligible for such a benefit" (8 U.S.C. § 1623(a)) it is telling the *states* to legislate in a specific way and dictating what they "may or may not do." *Murphy*, 584 U.S. at 474.  That is something Congress cannot do under the Tenth Amendment.

What is particularly problematic about Section 1623(a)'s command that states provide educational benefits to United States citizens or nationals is that it has *nothing* to do with immigration. The mere fact that it is embedded in a statute as part of Illegal Immigration Reform and Immigrant Responsibility Act does not mean that it confers on Congress powers beyond what is reserved to it by the Constitution.[8] The United States' complaint is premised on its position that Congress passed Section 1623(a) pursuant to its powers under the Naturalization Clause,  [R.4 at ¶ 8] but the statute, in requiring particular legislation as to non-resident citizens, is not even "rationally related" to Congress' power under the Naturalization Clause (*United*

---

[8] Congress was trying to coerce its preferred policy on immigration by adding the condition about citizens from other states, but that is improper coercion under the Tenth Amendment because it dictates policy in a plainly non-immigration-related area.

11

*States v. Comstock*, 560 U.S. 126, 134 (2010)) because it says nothing of who may enter or remain in the United States or who may obtain lawful immigration status. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 614 (2000) (finding that congressional findings of statute's downstream effect on interstate commerce insufficient to support conclusion that Congress acted within its powers under the Commerce Clause). Indeed, the Naturalization Clause "did not deprive the states of all power to legislate regarding aliens." *LeClerc v. Webb*, 419 F.3d 405, 423 (5th Cir. 2005) (citing *Plyler v. Doe*, 457 U.S. 202, 229 n. 9 (1982); *DeCanas v. Bica*, 424 U.S. 351, 358 (1976) (finding no evidence the Immigration and Nationality Act "intended to preclude even harmonious state regulation touching on aliens in general"). Congress cannot intrude on state sovereignty through a statute regulating immigration only in name and not substance. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 230 (2023) ("What cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows...") (internal quotations and citations omitted). Congress' power to regulate immigration is "levelled at the thing, not the name." *Id.* Congress has no authority to compel or penalize a state's internal fiscal or educational policy choices under the guise of regulating immigration.

Because "the Constitution does not empower Congress to subject state governments to this type of instruction," (*New York,* 505 U.S. at 176 (1992) Section 1623(a) improperly violates state sovereignty through coercion.

> **2.      Section 1623(a) Improperly Intrudes on State Power Over Education**

Section 1623(a) intrudes upon a domain historically and constitutionally reserved to the states: education policy and funding. "Today, education is perhaps the most important function of state and local governments." *Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.*, 347 U.S.

12

483, 493 (1954). Because education is squarely within the domain of the States, "[f]ederal courts should pause before using their inherent equitable powers to intrude into" that sphere. *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) (Thomas, J., concurring). When the federal government intrudes on a state's sovereign police powers over education, it "strip[s] state and local governments of one of their most important governmental responsibilities, and thus den[ies] their existence as independent governmental entities." *Id.* That is antithetical to our system of dual sovereignty.

State control of education is not a matter of administrative convenience, but a constitutional necessity that flows from our system of dual sovereignty. It ensures that decisions about the education of a state's citizenry, including how to fund schools, determine curricula, or structure tuition properly remain in control of the sovereign states. Because education is a fundamental state power, Congress must be explicit when it intends to intrude on the States' police power over education. *United States Forest Serv. v. Cowpasture River Preservation Ass'n.*, 590 U.S. 604, 622 (2020) (Congress must "enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power"). In enacting Section 1623(a), Congress did not make it "exceedingly clear" it intended to intrude on the states' police powers. *Id.* Section 1623(a) intrudes into state sovereignty by overriding the states' determinations about who qualifies for regular tuition, who merits financial support, and how state funds should be distributed among students. Those are quintessential state policy judgments—ones that the federal government has no constitutional authority to dictate.

By intruding into state education functions through this unlawful proscription, Section 1623(a) also undermines one of the most fundamental protections of the federalist system: political accountability. Federalism is not merely a division of power between the federal and

13

state governments; it is a structural safeguard to ensure that both levels of government remain directly answerable to their respective constituents. *See New York*, 505 U.S. at 169 ("Accountability is... diminished when, due to federal coercion, elected state officials cannot regulate in accordance with the views of the local electorate in matters not pre-empted by federal regulation"). Thus, when federal law forces state legislatures to enact or maintain policies not of their own choosing, accountability blurs. *Murphy*, 584 U.S. at 473-74. This is contrary to what the Constitution contemplates— "that a State's government will represent and remain accountable to its own citizens." *Printz v. United States*, 521 U.S. 898, 920 (1997).

This is especially important regarding decision-making concerning tuition rates at public colleges and universities, which is a power that belongs exclusively to the states. When Congress dictates the outcome of those decisions, it strips those choices from the people and their elected representatives. What results is that state officials bear the political cost of a policy they were forced to adopt, while Congress reaps the benefit of setting a national policy without the political consequences of implementing or funding it. *Murphy*, 584 U.S. at 473 ("When Congress itself regulates, the responsibility for the benefits and burdens of the regulation is apparent. Voters who like or dislike the effects of the regulation know who to credit or blame"). The Constitution does not permit Congress to obscure accountability in this way.

"[S]ome state officials have welcomed the involvement of the federal court as a means of achieving [ ] objectives that could not be achieved through the ordinary democratic process." *Horne v. Flores*, 557 U.S. 433, 448 n.3 (2009). In such "friendly" suits, "government officials may try to use consent decrees to block ordinary avenues of political change or to sidestep political constraints." *Id.* at 448-49. This is what the Moving Parties attempt here.

14

The Moving Parties' proposed consent judgment thwarts the Kentucky state legislature's goal of regulatory oversight. The Kentucky state legislature passed the Kentucky Regulations from the Executive in Need of Scrutiny (REINS) Act to ensure that regulatory changes, including repeals, are done with significant oversight. Ky. Rev. Stat. Ann. § 13A.310(3)(a). Legislative efforts to overturn Section 8(4)(a) have failed. In Kentucky's most recent legislative session, a bill was introduced to repeal the challenged regulation, *AN ACT relating to immigrants*, H.B. 352, 2025 Ky. Leg. (Feb. 2025) (introduced), but the bill did not make it out of committee. *Id.* The Moving Parties now turn to this Court and ask it to do what the state legislature would not. They ask this Court to place its "power and prestige" (*Williams*, 720 F.2d at 920) behind the repeal of Section 8(4)(a). Thus, the Court's review of the proposed consent decree is of critical importance.

Similarly, in Texas' most recent legislative session, the Texas legislature declined to pass S.B. 1798, which would have prohibited undocumented students from qualifying for the regular tuition rate. *Relating to the resident status, tuition rates, certain financial support, and certain documentation requirements for students enrolled at public institutions of higher education, including students not lawfully present in the United States*, S.B. 1798, 2025 Tex. Leg. (May 2025) (introduced). The bill was introduced on May 26, 2025, and was not placed on the intent calendar. Id. Less than two weeks later, the United States sued to enjoin the Texas law and within the span of a single day, a consent judgment was entered. *Texas*, No. 7:25-cv-00055 (N.D. Tex. June 4, 2025) (order and final judgment declaring Texas law unconstitutional and permanently enjoining its enforcement). As in Texas, the proposed consent judgment here is a prime example of politicians abusing the power of the federal courts to circumvent state legislatures and "win by losing." *Horne*, 557 U.S. at 449.

By ordering state legislatures to grant educational benefits to all U.S. citizens and nationals if they elect to grant the benefits to undocumented immigrants, state legislatures are, in effect, "dragooned… into administering federal law." *Printz v. United States*, 521 U.S. 898, 928 (1997) (brackets omitted). That is what the Tenth Amendment was designed to prevent. Because Section 1623(a) improperly intrudes on state sovereignty and Congress did not make it "exceedingly clear" it intended to alter the traditional balance between federal and state power, (*Cowpasture River Preservation Ass'n*, 590 U.S. at 622) the United States' claim fails.

### iii.    Section 8(4)(a) Complies with Section 1621(d)

The United States' contention that the challenged regulation violates 8 U.S.C. § 1621(d) also fails. [R. 4 at ¶ 44]. Section 1621(d) provides that a state may deem undocumented immigrants eligible "for any State or local public benefit…only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d). "Under Kentucky law, administrative regulations have the full force and effect of law when duly enacted and consistent with enabling legislation." *Hughes v. UPS Supply Chain Solutions, Inc.*, 677 S.W.3d 273, 280 (Ky. 2003). The United States concedes CPE had authority to promulgate the regulation. [R. 34 at 14-15]. Thus, Section 8(4)(a) is state law. The "affirmatively provides" requirement is also satisfied because Section 8(4)(a) "expressly state[s] that it applies to undocumented" immigrants. *See Martinez,* 241 P.3d at 868.

### B.  The Proposed Consent Judgment is Unfair

A key feature of a consent decree is that the court will have had "no occasion to determine the merits of the controversy or the factual underpinning of the legal theories advanced by the parties. *Williams*, 720 F.2d at 921. As explained *supra*, the United States can

prevail only by depriving the Court of that opportunity. The United States has the burden of proving its case and should not be able to avoid judicial review of its claim on the merits.

In less than two months of litigation, Defendant Thompson and the CPE agreed to resolve this case via consent judgment. [R. 24]. The United States posited that the proposed consent judgment was the product of a "considered decision," [R. 34 at 17] yet this Court already noted in granting KSAT's motion to intervene that "[t]he record is devoid of any indica that CPE ever sought to defend § 8(4)(a) before joint moving with Plaintiff for entry of a consent judgment declaring § 8(4)(a) unconstitutional." [R. 38 at 15-16].

The Moving Parties have the burden of demonstrating the proposed consent judgment is fair and reasonable. *Williams*, 720 F.2d at 920. They have made no such showing. The inevitable harm for KSAT's members and countless other undocumented students warrants denial of the proposed consent judgment. The Court should have the opportunity to decide the merits of this case based on a full understanding of the challenged regulation and Section 1623(a).

### C. The Proposed Consent Judgment is Not in the Public Interest

The United States advocates for an unconstitutional reading of Section 1623(a). "It is in the public interest not to perpetuate the unconstitutional application of a statute." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982). It is therefore in the public interest for the Court to deny the proposed judgment.

Further, the value of a higher education cannot be overstated. Denying education to undocumented immigrants "raises the specter of a permanent caste of undocumented resident aliens, encouraged by some to remain here as a source of cheap labor, but nevertheless denied the benefits that our society makes available to citizens and lawful residents." *Plyler v. Doe*, 457 U.S. 202, 218-19 (1982). American society benefits from an educated populace. Individuals with

17

bachelor's degrees are 24% more likely to be employed[9], experience substantially lower unemployment rates[10], have lower smoking rates[11], are more likely to volunteer[12], and show greater financial literacy[13] among countless other positive socioeconomic outcomes. Individuals with college degrees contribute an estimated $273,000 more in taxes during their lifetime than high school graduates.[14] Thus, it is not in the public interest to take these opportunities for advancement away. Depriving any person of an education can only harm the public interest.

To the extent the United States argues the challenged regulation "discriminates against U.S. citizens," or "treat[s] Americans like second-class citizens,"[15] those contentions are without any legal support. Further, if the United States prevails, only Section 8(4)(a) would be enjoined. *See* [R. 25] The rest of the regulation would remain in place. Those out-of-state citizen students the United States allegedly seeks to protect *still* would not qualify. Thus, the United States' contention that this lawsuit protects U.S. citizens is disingenuous.

### III.   CONCLUSION

For the foregoing reasons, KSAT respectfully asks this Court to deny the Moving Parties' Motion for Entry of a Proposed Consent Judgment.

---

[9] *How do college graduates benefit society at large?*, ASSOCIATION OF PUBLIC & LAND-GRANT UNIVERSITIES, https://www.aplu.org/our-work/4-policy-and-advocacy/publicuvalues/societal-benefits/.

[10] Chris Muller, FORBES, *New Research Reveals the True Value of a College Education*, Dec. 29, 2024, https://www.forbes.com/sites/chrismuller/2024/12/29/new-research-reveals-true-value-of-college-education/

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *How do college graduates benefit society at large?*, Association of Public & Land-Grant Universities, https://www.aplu.org/our-work/4-policy-and-advocacy/publicuvalues/societal-benefits/.

[15] *The Justice Department files complaint challenging Kentucky Regulation providing reduced in-state tuition for illegal aliens*, OFFICE OF PUBLIC AFFAIRS UNITED STATES DEPARTMENT OF JUSTICE (June 17, 2025) https://www.justice.gov/opa/pr/justice-department-files-complaint-challenging-kentucky-regulation-providing-reduced-state.

## REQUEST FOR ORAL ARGUMENT

KSAT respectfully requests this Court schedule oral argument for the Motion for Entry of

a Proposed Consent Judgment under LR 7.1(f).

Date: January 9, 2026                          Respectfully submitted,

                                               */s/ Olivia Alden*

                                               **MEXICAN AMERICAN LEGAL
                                               DEFENSE AND EDUCATIONAL FUND**

                                               Thomas A. Saenz*
                                               643 S. Spring St., 11th Fl.
                                               Los Angeles, CA 90014
                                               (213) 629-2512
                                               tsaenz@maldef.org

                                               Susana Sandoval Vargas^
                                               Olivia Alden^
                                               100 N. LaSalle St., Suite 1900
                                               Chicago, IL 60602
                                               Phone: (312) 427-0701
                                               Email: ssandovalvargas@maldef.org
                                               Email: oalden@maldef.org

                                               *Attorneys for Kentucky Students
                                               for Affordable Tuition*

                                               *^Admitted pro hac vice*
                                               *\*Application for admission pro hac vice
                                               pending*